## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM CAIN, JR.,

      Plaintiff,

v.                                     Case No.  3:21-cv-71-BJD-MCR

ALEXIS FIGUEROA,

      Defendant.

_____

## **ORDER**

### I.   **Status**

Plaintiff, an inmate of the Florida penal system, initiated this case in the Northern District of Florida by filing a Civil Rights Complaint under 42 U.S.C. § 1983. Doc. 1. Upon screening, the Honorable M. Casey Rodgers, United States District Judge, transferred the case to this Court. Doc. 31. Plaintiff is proceeding on a Third Amended Complaint (Doc. 29; TAC) against one Defendant – Alexis Figueroa, M.D.[1]

---

[1] In the TAC, Plaintiff names four Defendants – Figueroa; N. Anandjiwal, Mark Inch, and Behazadi. TAC at 2-4. Before transferring this case to this Court, the Northern District of Florida dismissed Plaintiff's claims against Defendants Inch, Anandjiwal, and Behazadi, and it transferred only Plaintiff's claims against Figueroa to this Court. See Doc. 31

Before the Court is Figueroa's Motion to Dismiss (Doc. 51; Motion). The Court advised Plaintiff that the granting of a motion to dismiss would be an adjudication of the claims against Figueroa that could foreclose any subsequent litigation of the matter and provided Plaintiff with an opportunity to respond. See Order (Doc. 41). Plaintiff filed a response in opposition to the Motion (Doc. 57; Response). The Motion is ripe for the Court's review.

## II.   **Complaint Allegations**

Although not a model of clarity, Plaintiff's allegations surround the medical care he received at six different facilities between 2009 and 2017 to treat complications involving an abdominal injury. TAC at 10. Because the only claims before the Court are those involving Defendant Figueroa, the Court summarizes only the facts surrounding Figueroa's alleged conduct. According to Plaintiff, in January 2017, he underwent surgery at Memorial Hospital for an intestinal blockage. Id. at 11. Following the surgery, Plaintiff's incision site became infected, resulting in a second and third surgery. Id. at 11-12. Plaintiff asserts that after his third surgery, prison officials returned him to Suwannee Correctional Institution where Defendant Figueroa was assigned as Plaintiff's medical provider. Id. at 12. According to Plaintiff, during Figueroa's initial medical evaluation, Figueroa saw the stitches in Plaintiff's abdomen had healed. Id. at 25. Plaintiff contends he asked Figueroa to remove the stitches, but Figueroa refused, causing "unnecessary scar tissue" and resulting in the

stitches now being "embedded in his abdominal tissue." Id. at 12, 25. Plaintiff states he also advised Figueroa that the catheter in his abdomen "began to leak urine on the outside of his abdomen." Id. at 12. According to Plaintiff, however, Figueroa refused to provide any medical care or treatment for the embedded stitches or leaking abdominal catheter, "including denying [Plaintiff] medical supplies to control and soak up the urine leaking from his abdominal catheter." Id. at 26. As such, Plaintiff asserts officials eventually transferred him to the Reception and Medical Center for further evaluation. Id. at 13.

Plaintiff asserts that Figueroa was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. Id. at 13. He contends Figueroa was aware of Plaintiff's need for medical care and "ignored, delayed, and/or interfered with a proper treatment plan to provide adequate and necessary medical care to treat" Plaintiff. Id. He maintains the embedded stitches "have and are causing" him to suffer extreme pain and the leaking catheter has caused him "to be shunned and ridiculed by other inmates and prison staff." Id. at 27. As relief, Plaintiff requests $75,000 in compensatory and punitive damages. Id. at 16.

## III.  **Defendant Figueroa's Motion and Analysis**

Figueroa requests that the Court dismiss the claims against him because (A) Plaintiff misrepresented that he has never previously filed a civil rights action; (B) Plaintiff failed to exhaust his administrative remedies as to his

claim that Figueroa refused to remove the sutures from Plaintiff's healed surgical site; and (C) Plaintiff fails to state a claim upon which relief may be granted. See generally Motion.

The Court finds that because Plaintiff misrepresented his prior civil rights litigation, this case is due to be dismissed. Nevertheless, in the alternative, the Court finds Plaintiff has failed to exhaust his administrative remedies as to his claim regarding Figueroa's failure to remove his sutures, and Plaintiff has failed to state a plausible claim for relief regarding Figueroa's failure to replace his leaking catheter. The Court details its findings below.

## A. Misrepresentations About Prior Civil Rights Actions

Figueroa requests that the Court dismiss this case because Plaintiff has failed to honestly disclose his prior litigation history. Motion at 5-6. According to Figueroa, in Plaintiff's TAC, he states he has filed no other federal lawsuits challenging the conditions of his confinement; but a review of Plaintiff's prior federal filings reveals Plaintiff has filed three other pro se civil rights actions during his incarceration, two of which were dismissed as frivolous and/or for failure to state a claim. Id. at 5-6. Figueroa asserts that because of Plaintiff's misrepresentations, the Court should exercise its discretion and dismiss this case. Id. at 6.

In response, Plaintiff contends that he is "illiterate and cannot understand the intricate matters and language of the relevant forms or answer

4

the appropriate questions." Doc. 57 at 2. He references the "three-strikes" provision in 28 U.S.C. § 1915(g) and suggests he is in imminent danger and argues that dismissing this case would "encourage the medical practitioners contracted with the State of Florida to continue to ignore and overlook serious medical needs of inmates." Id.

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint or a portion of a complaint if the complaint is frivolous, malicious, or fails to state a claim. See 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), 1915A(b)(1). The Eleventh Circuit has held a court's discretion to dismiss an action under § 1915 includes those situations in which a plaintiff fails to truthfully disclose his litigation history because such conduct "constitutes an abuse of the judicial process." Sears v. Haas, 509 F. App'x 935, 936 (11th Cir. 2013) (citing Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997)); see also Jenkins v. Hutcheson, 708 F. App'x 647, 648 (11th Cir. 2018) (affirming dismissal without prejudice under § 1915 for the plaintiff's "failure to fully disclose his litigation history").

Additionally, Rule 11 of the Federal Rules of Civil Procedure permits a district court to impose sanctions on a party who knowingly files a pleading containing a false contention. See Fed. R. Civ. P. 11(b). The Eleventh Circuit instructs that courts should hold pro se litigants to "less stringent standards" than those proceeding with lawyers, see Bilal v. Geo Care, LLC, 981 F.3d 903,

911 (11th Cir. 2020), but "a plaintiff's pro se status will not excuse mistakes regarding procedural rules," see Redmon v. Lake Cnty. Sheriff's Off., 414 F. App'x 221, 225-26 (11th Cir. 2011) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)).

In his original Complaint (Doc. 1), Amended Complaint (Doc. 19), Second Amended Complaint (Doc. 25), and TAC, all of which Plaintiff signed certifying his compliance with Rule 11, Plaintiff misrepresented his litigation history. He certified that he had never previously filed a federal lawsuit relating to the conditions of his confinement, nor had he had any case dismissed for a reason listed in § 1915(g). TAC at 17-20. But as Figueroa notes in his Motion, a search of Plaintiff's litigation history reveals he has filed these cases: (1) 5:93-cv-50218 (N.D. Fla.) (dismissed as frivolous); (2) 4:94-cv-40344 (N.D. Fla.) (dismissed for Plaintiff's failure to prosecute); and (3) 3:98-cv-370 (N.D. Fla.) (dismissed under 28 U.S.C. § 1915A(b)(1)). See Docs. 51-1, 51-2.

Upon careful consideration of Plaintiff's response and his filing history, the Court finds Plaintiff's explanation that he misunderstood the complaint form disingenuous. The question at issue asks whether a litigant has "filed any other lawsuits in federal court either challenging your conviction or otherwise relating to the conditions of your confinement?" TAC at 19. This question is clear, especially when read along with the immediately preceding questions, which ask whether a litigant has filed other cases "dealing with the same facts"

6

as those involved in the instant action or whether the litigant has "had any case dismissed for a reason listed in § 1915(g) which counts as a 'strike'?" Id. at 18. Further, and likely of more import, the form cautions Plaintiff that his "[f]ailure to disclose all prior cases may result in the dismissal of this case." Id. at 20. Reading these questions and directions together, there is no ambiguity that Plaintiff was to, at most, honestly advise the Court that he had previously filed suits challenging the conditions of his confinement.

While Plaintiff is proceeding pro se and has no formal legal training, his litigation history suggests he is an experienced prison-litigator. Plaintiff has successfully initiated multiple civil rights cases. Further, he currently has a federal habeas case under 28 U.S.C. § 2254 pending before the Court. See Cain v. Sec'y, Fla. Dep't of Corr., No. 3:20-cv-1431-TJC-PDB (M.D. Fla.). And when filling out the form petition for that § 2254 case, Plaintiff detailed the prior cases he has filed challenging his state court judgment of conviction, showing he comprehended those questions. Id. at 2-3.

Even if Plaintiff's omission here was unintentional or he legitimately found the question unclear, the Eleventh Circuit has explained a misunderstanding does not excuse a prisoner's failure to truthfully answer straightforward questions in a civil rights complaint form. See Redmon, 414 F. App'x at 226 (holding the district court did not abuse its discretion dismissing a pro se prisoner's complaint for abuse of judicial process, despite the plaintiff's

7

contention that he misunderstood the complaint form, which "clearly asked [the plaintiff] to disclose previously filed lawsuits . . . with similar facts . . . [and those] otherwise relating to his imprisonment or conditions of his imprisonment"). <u>See also</u> <u>Jenkins</u>, 708 F. App'x at 648, 649 (holding "the district court was entitled to dismiss [the plaintiff's] complaint based on his failure to fully disclose his litigation history," even though the plaintiff disclosed some of his prior cases and his conduct appeared unintentional). The Court finds Plaintiff's misrepresentation of his litigation history amounts to an abuse of judicial process, warranting dismissal of the action without prejudice. And thus, Figueroa's Motion is due to be granted in this regard.

## B. Exhaustion

Alternatively, Figueroa argues that Plaintiff failed to exhaust his administrative remedies as to his claim that Figueroa failed to remove the sutures from Plaintiff's healed abdominal wound. Motion at 6-11. In support of his argument, Figueroa provides a compilation of the medical grievances Plaintiff submitted in 2017 and after. Figueroa asserts that while Plaintiff may have exhausted his claim that Figueroa failed to treat Plaintiff's leaky catheter, none of the medical grievances Plaintiff filed between 2017 and 2020 contain allegations that Figueroa or any other medical provider failed to remove his abdominal sutures. <u>Id.</u> at 9. As such, Figueroa argues that claim should be dismissed for Plaintiff's failure to exhaust.

In his Response, Plaintiff contends that he exhausted his administrative remedies for all his claims against Figueroa, and that he "has explained his grievance process in this Third Amended Complaint." Doc. 57 at 3. He asserts that while Figueroa maintains that Plaintiff's grievances do not contain any allegations about the failure to remove sutures, "[f]rom a prisoner's standpoint, what goes on in a medical department may be a mystery," and "[h]e does not always know . . . who made a particular decision that affects his health." Id. To that end, Plaintiff suggests that he did not have to exhaust his claim about the sutures because his prisoner status prevented him from discovering the claim or the identity of the responsible prison official, rendering the remedy unavailable. Id.

The PLRA requires that Plaintiff exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the

United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

Because failure to exhaust administrative remedies is an affirmative defense, Defendant bears "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082–83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015); <u>see also</u> <u>Jones</u>, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. <u>Dimanche</u>, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. <u>See</u> Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. <u>See</u> <u>id.</u> § 33-103.011(4).

<u>Pavao</u>, 679 F. App'x at 824. However, the ordinary three-step procedure does not apply in all instances. A prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner is permitted to bypass the informal grievance step, he must file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office

of the Secretary using Form DC1-303 (same form as a formal grievance)."
Jenkins v. Sloan, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin.
Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary
must be received within 15 days from the date the response to the formal
grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

Accepting Plaintiff's view of the facts as true, the Court finds dismissal
of his claim that Figueroa failed to remove Plaintiff's sutures for lack of
exhaustion is not warranted at the first step of Turner. Thus, the Court
proceeds to the second step of the two-part process where the Court considers
Figueroa's arguments about exhaustion and makes findings of fact to resolve
the disputed issues.

In resolving the first disputed issue, the Court finds that Plaintiff did not
complete the administrative grievance process for his claim that Figueroa
violated his Eighth Amendment rights when Figueroa failed to remove
Plaintiff's sutures after his abdominal wound healed. Figueroa provides over
fifty formal medical grievances and appeals that Plaintiff filed between March
2017 and July 2020. See generally Doc. 53-1. Because Plaintiff initiated this
case on or about October 24, 2019, the Court only considers the grievances that
Plaintiff submitted before that date. Plaintiff submitted around forty-three
grievances during the relevant period, twenty-seven of which Plaintiff
submitted while housed at Suwannee C.I. between March 2017 and September

13

2018 and sixteen of which he submitted while housed at Northwest Florida Reception Center between July 2019 and October 2019. See Doc. 51-3 at 30-120.

After a careful reading of those forty-three grievances (id.), the Court finds that Plaintiff never alleged that he requested any medical official to remove his abdominal stitches but medical refused to do so, causing scar tissue to embed the sutures in Plaintiff's stomach tissue. Instead, the formal medical grievances and grievance appeals that Plaintiff filed while housed at Suwannee C.I. involved the return of personal property (Doc. 51-3 at 119-20, 116-17, 114); refusal to adhere to specialist's recommendations and denying medical passes (id. at 116, 114, 112, 110, 106, 102-03); failing to provide Plaintiff with orthopedic footwear (id. at 108, 106); verbal abuse from medical staff (id. at 94, 74, 72, 70); failure to treat Plaintiff's leaking catheter (id. at 90-91, 87, 83, 72); refusal to provide Plaintiff with necessary medication (id. at 86, 75); abdominal pain from what Plaintiff believed was a hernia or tumor (id. at 83, 79); and the nurse's negligence when drawing Plaintiff's blood (id. at 78). Plaintiff also filed several grievances alleging that medical, including Figueroa, discharged him from the infirmary before his colostomy wound healed and without wound-care supplies. Id. at 98-99, 75.

The formal medical grievances and grievance appeals that Plaintiff filed while housed at NWFRC and before initiating this case involved requests for a

14

c-pap machine (id. at 68, 39); general request that medical provide him treatment for his "chronic condition" (id. at 66); violation of the Americans with Disabilities Act (id. at 60); retaliation by prison staff (id.); treatment for a hernia (id. at 60, 54, 50); blood in urine (id. at 58, 56, 36); leaking catheter (id. at 50); request to see a medical specialist (id. at 39); and return of personal property (id. at 32, 30, 29).

While Plaintiff alleges that his TAC explains the actions he took to exhaust, Plaintiff did not provide any details or statements under the TAC's "exhaustion of administrative remedies" section or otherwise mention any efforts to exhaust his claims. See generally TAC. The record before the Court, however, demonstrates that although Plaintiff fully availed himself of the administrative process to notify prison officials of his medical ailments, he never alleged or included facts suggesting a perpetual refusal to remove stitches now embedded in his abdomen and still causing Plaintiff extreme pain. The Court finds that Figueroa has met his burden in showing that Plaintiff did not complete the grievance process for that claim.

Plaintiff also appears to argue that the grievance process was unavailable, relieving him of any obligation to complete the sequential grievance procedure. In support of that argument, Plaintiff simply asserts that his incarceration status prevented him from obtaining the relevant information about his claim or the identity of the responsible prison official.

Doc. 57 at 3. The Court finds this argument unpersuasive. Indeed, the record shows Plaintiff had no issue obtaining grievance forms or identifying his medical problems. <u>See generally</u> Doc. 53-1. Further, in several grievances Plaintiff filed while housed at Suwannee C.I., he references Figueroa (<u>see, e.g.,</u> Doc. 53-1 at 99, 95, 87, 83), and in his TAC, Plaintiff alleges Figueroa was his primary medical official who treated him at Suwannee C.I. (TAC at 25). Because Plaintiff was actively availing himself of the grievance process, especially at Suwannee C.I., during the relevant timeframe, the Court finds that Plaintiff was not deterred or thwarted from pursuing his administrative remedies nor was he unaware of medical officials whom he routinely centered his complaints around. In any event, even assuming Plaintiff did not know the identity of a particular medical official, his failure to make any allegation in his grievances that he was suffering from the alleged embedded stitches is dispositive of this issue. Thus, the Court finds that neither Plaintiff's assertions nor the evidentiary materials in the record show that the administrative remedies were unavailable to Plaintiff. Figueroa's Motion is due to be granted to the extent that Plaintiff's claim about Figueroa's failure to remove the stitches is dismissed for Plaintiff's failure to exhaust.

### C. Failure to State a Claim

Finally, Figueroa argues Plaintiff fails to state an Eighth Amendment claim about his alleged refusal to treat Plaintiff's leaking abdominal catheter

or provide Plaintiff with "medical supplies to control and soak up the urine leaking" from the catheter.[2] Motion at 11-16. In support of this argument, Figueroa asserts Plaintiff has failed to allege that the leaking catheter involved an objectively serious medical need and that Figueroa's conduct amounted to more than negligence. Id. at 15-16. In response, Plaintiff contends he has stated a plausible claim for relief and suggests he should be allowed to conduct discovery to keep developing his claim. Doc. 57 at 6. He also appears to argue that because of his medical ailments, prison staff have ridiculed and humiliated him in the presence of other inmates. Id. at 7.

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of

---

[2] Figueroa also argues that Plaintiff fails to state a plausible Eighth Amendment claim as to Figueroa's alleged failure to remove Plaintiff's stitches, but because the Court finds that claim is due to be dismissed for Plaintiff's failure to exhaust, it need not address it here.

17

a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citations omitted). Additionally, the Eleventh Circuit requires "'an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." Rehberger v. Henry Cnty., Ga., 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). In the absence of a federal

constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

Plaintiff is a prisoner; thus, his claim of deliberate indifference to a serious medical need arises under the Eighth Amendment. See Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need. Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (citing Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference."

Richardson, 598 F.3d at 737 (describing the three components of deliberate

indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard

of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow,

320 F.3d at 1245)).

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, Farmer, 511 U.S. at 835. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott [v. Foley, 182 F.3d 1248 (11th Cir. 1999),] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor [v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)] (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46; see also Patel v. Lanier Cnty. Ga., 969 F.3d 1173,

1188-89 & n.10 (11th Cir. 2020) (recognizing "a tension within [Eleventh

Circuit] precedent regarding the minimum standard for culpability under the

deliberate-indifference standard," as some cases have used "more than gross

negligence" while others have used "more than <u>mere</u> negligence"; finding, however, that it may be "a distinction without a difference" because "no matter how serious the negligence, conduct that can't fairly be characterized as <u>reckless</u> won't meet the Supreme Court's standard" (citations omitted)).

Here, Plaintiff has failed to allege that the leaking catheter was an objectively serious medical need that posed a substantial risk of serious harm. Plaintiff never asserts that the leaking catheter caused him pain or suffering but instead merely alleges that the leaking urine "caused him to be shunned and ridiculed by other inmates and prison staff." TAC at 27. While the Court is not condoning prison staff or other inmates verbally ridiculing Plaintiff because of that medical device, it cannot find that Plaintiff's leaking catheter amounted to an objectively serious medical need simply because it resulted in that embarrassment. The Court also finds that Figueroa's failure to replace the leaking catheter, if true, amounted to no more than mere negligence. As such, the Court finds that Plaintiff has failed to state a plausible Eighth Amendment claim regarding his leaking catheter, and Defendant's Motion is due to be granted as to this argument.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    Defendant Figueroa's Motion to Dismiss (Doc. 51) is **GRANTED**.

2.    This case is **DISMISSED without prejudice**.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of December, 2021.

_____
BRIAN J. DAVIS
United States District Judge

Jax-7

C:     William Cain, #319171
Counsel of record

22